May it please the Court, I would like to make one point with regard to the claim construction and one with regard to the document's equivalence. The Court erred, the District Court erred by importing limitations from the specifications into the claims and his construction of the mounted-on and deflection chute and ignoring a vital part of the file history where the examiner in looking at the Japanese 192 reference in his office section found that it contained a housing with a deflection chute on portion L mounted on one side of the housing. And looking at the drawing that he was referring to, it is clear that that is not a separate piece that is attached to. The second point is under the doctrine of equivalence. He applied the wrong standard, I believe, on A-9 when he found that this record does not establish that persons learned in the art would deem the bent sub and the mounted chute interchangeable. According to the law that he cited, that evidence has to be disputed evidence as opposed to having the burden of proving it, and he appears in that sentence to hold the plaintiff to a standard of proving that the bent sub and mounted chute would be interchangeable. He also ignored the comprehensive affidavit of the engineer Jeff Coe, spelled K-O-C-H, found at A-333-95, where Mr. Coe outlined the elements of the doctrine of equivalence and found that even if the court's construction were correct, that the elbow formed by the two pieces of the bent sub were to screw together would, in fact, be considered by one of ordinary skill in the art and describes exactly how it interacts with the borehole to cause the deflection, and that it accomplishes the same thing in the same way, that it is interchangeable, that it is a substitute under the doctrine of equivalence, and he apparently ignored that evidence. Isn't it true that in this industry that it's generally recognized that the bent sub approach and the deflection chute approach are different approaches to changing the direction of the drill bit? I do not agree with that statement, Your Honor. First of all, the only evidence of that is the extrinsic record. There is no evidence of that in the intrinsic record. Well, let's talk about the extrinsic record. Okay, I would first point out that that's the last thing to be considered, but the evidence submitted there is a phrase that was used internally called a steering shoe tool versus a bent sub tool. It was shorthand terminology. Information submitted by the defendant itself where it talks about the industry found at A1687 and 88 is a periodical, considering extrinsic evidence, where a document that they support describes exactly how the bent sub works, and it's apparently an old historical document that certainly was in existence when the patent was prosecuted. And at page A1687, right above figure 7.1, the last sentence starts describing how the bent sub works. The bent sub exerts a force on the wellbore wall, causing the bit to deflect in the direction of the sub orientation. The variables associated with the bent sub are shown in figure 7.2 and defined in the given mathematical formula. The terminology, because of a difference in appearance, was shorthand terminology that was developed internally, but certainly the industry recognized for many years that the bent sub worked because it contained the deflection feature in it, because that's what causes it to steer, is the elbow pushing against the wall of the borehole to cause it to change directions. But I guess my question was, didn't the industry recognize that these were two distinct types of approaches to changing the drill bit direction, the bent sub and the deflection shoe? Is my statement inaccurate? I believe your statement is inaccurate. It's two tools, but not different approaches. The approaches are identical. You believe that the record evidence demonstrates via your expert testimony that people of skill and the art of the time believed these two tools to be interchangeable? Yes, Your Honor. And there's no evidence in the record that demonstrates that they operate to perform a different function, with a different way, a different result, nothing like that? There is nothing in this record. There are competing expert affidavits. But that would be a question of fact. That would be a question of fact, and our competing expert's affidavit mirrors this language. It describes that a deflection shoe and a bent sub are two tools that do the same thing in the same way. And of course, their expert's affidavit, which is in here, says no, that's not true. But the court said in his opinion… But the two tools are defined by the same way, because the two tools are different, right? They look different, but they do nothing different. A difference would be if you had a bent sub with a mud motor on the end of it, and you had to change it in order to go in a straight direction. You had to change the tool. These are both tools that do exactly the same physical reaction to the borehole. They cause a deflection that causes the borehole to not be straight whenever you stop rotating the outside part. That really seems to depend on the level of generality with which you approach the question of way. For example, a hammer and a rock could both be used, held in the hand to drive a nail into a board, but are they doing it in the same way? That's the question. In other words, the concept of way is not a precise one, right? Well, that is a technical question, I agree, and that is a question of fact that the experts disagreed on. This is a question of fact as to what the way is defined in the claims. Is that a question of fact, or is that a question of claim construction? Well, the phrase mounted on is a question of claim construction. No, but we're getting to the doctrine of equivalence. Is the definition of the way, function, way, result, is the function the way of the result? I think my interpretation is... It's not a question of claim construction. I don't believe so, Your Honor. Okay. I think when two engineers disagree, but they both agree that both the deflection and the bent sub tools steer by stopping the rotation of the outside pipe and pushing while you rotate the inner pipe, and the deflection that causes the steering could be in a separate piece that's attached to, or it could be in a part that is in fact integral to that casing as it was in the Japanese reference cited by the patent examiner in his office action. And another factor here that contributes to the doctrine of equivalence is that the Vermeer bent sub is not a single piece. It is two pieces that are screwed together to form this deflection shoe, which is another fact question about the definition of a deflection shoe mounted on the tool. But, I mean, you see the problem. You say, well, it's the same way because they both do it by, you know, leaning against the borehole, and, you know, one does it with a deflection shoe, one does it by, you know, the bent sub direction. I mean, you could imagine that some people would say it's the same way and other people would say, no, it's a different way, right? Well, that's, in fact, what we have here. I can certainly understand that fact difference, and that's where the judgment is to whether it's the same way or not. I do agree. Do you have any of our case law handy? For example, I wrote a case recently that's called Brilliant that says that. I happen to have that, Your Honor. I wanted to call it the Brilliant decision. I tried to help you out. I was afraid that if I called it the Brilliant decision, that would be too much lesson for the court. No, stop. And his honored descendant, which I'm well aware of, too. But under the doctrine of equivalence there, the question is, was there any evidence that the jury could have found them to be equivalent? And was there evidence that the differences were insubstantial, that the items were interchangeable and substitutes? That's what we have here in the evidence. I think it's also—I'm sorry. No, I didn't have a question. I think the court very clearly is holding us to the wrong hand. When the court says the evidence doesn't establish, that's different than the evidence when viewed most favorably to the nonmoving party is disputed or when viewed in favor of the nonmoving party. He doesn't say that. At A-9, he said, this record does not establish that persons learned in the art would deem the bent sub and mounted shoe interchangeable. That's the wrong standard on appeal. And I believe that's what he—he also gave no discussion in coming to that of why Mr. Coe's affidavit was insufficient to establish that, if it were uncontested, but of course it was contested. And his opinion on the doctrine of equivalence, as found again at A-3395 and 3396, is a page-plus discussion of each of the elements and why one of ordinary skill in the art would consider them to be interchangeable. And in fact, I think he even uses those phrases after describing what they both do to cause the result, these structures would be interchangeable. And they are also interchangeable and considered substitutes by one of ordinary skill. I think it's also important to remember that the court did not take into consideration the patent examiner's finding. When you look at the drawing that the patent examiner was looking at, which is found at A-242, the patent examiner said it has a housing with a deflection shoe or a portion out mounted on one side of the housing. The court did not consider that important intrinsic evidence. OK. Thank you, Mr. Tomlinson. Ms. Zimmerman? Thank you, Your Honor. May it please the court? The district court's decision of summary judgment in favor of Vermeer should be affirmed. In your summary judgment motion, it seems to me that you did not really address the doctrine of equivalence. Am I missing something? Your Honor, we did address the doctrine of equivalence, and we addressed it in a couple ways. The first way we addressed it was specifically with respect to the affidavit of Mr. Perkin, who was Vermeer's expert, who explained the difference between deflection shoe steering and bent sub steering. And that is in the record, explaining the way these two things work. But there was no discussion of the doctrine of equivalence in the motion itself, right? Well, there was a discussion and a reference to the Perkin affidavit. But also, as Your Honor understands from the record of this case, this motion shifted a little bit over time. As it was originally filed, it pertained to certain claim terms, specifically the mounted on and while continuing rotation claim terms. And as it progressed, and the district court requested further information from the parties on the other claim terms that had been presented for construction, Vermeer presented a final proposed order later on in the process where it also talked about additional claim terms, including the deflection shoe limitation. And I would submit that the record… But where did it discuss the doctrine of equivalence? The doctrine of equivalence was addressed in the opening initial briefing and also… Could you show me where? On page A, 1650, for example, we talked about the doctrine of equivalence. 1650? Yes, Your Honor. So what am I looking at here? Which document is this? So this is in the joint appendix. No, no, but I mean… Oh, this is Vermeer's motion for summary judgment. And it states in that document that CMW may argue that if these limitations are not literally infringed, then the doctrine of equivalence applies and Vermeer still infringes. And we explain why the doctrine of equivalence cannot apply in this case, because the bent sub cannot be equivalent to a deflection shoe that is mounted on the casing. In this case, I think the record is very clear that a bent sub and a deflection shoe, Your Honor, were two different things. CMW itself, when it tries to implement a commercial product to sell under its patent, started with a deflection shoe. And their internal documents, as Your Honor noted, show that it was working on the deflection shoe device and couldn't make it work. And it ultimately decided, well, we can't make this deflection shoe work, let's look at the bent sub, maybe we can make a bent sub work. CMW's documents show that it shifted from the deflection shoe, which it couldn't make work, to a bent sub steering technology, which was a different steering technology, when it could not make the deflection shoe work. And in fact, that when it did so, it recalled all of the units that it had in the field that used deflection shoes, because they weren't able to work, and replaced them with units that had bent subs, because those did work. They were able to steer with less torque. Isn't that all a question of how they, what the way in which they operate and what the results that they achieve? You may well be able to establish, as a matter of fact, that the result of using a bent sub versus a deflection shoe is quite different. Look, even their products didn't work. When they did it this way, they only worked when they did it this other way. They took them off the market for that reason. Those are all great arguments for proving and establishing the question of fact. But why is that a matter for summary judgment? Well, Your Honor, respectfully, I would suggest that the doctrine of equivalence is not, and was never intended to be, a way for patent owners to change the scope of their claims, because they decided that they had written them too narrowly, to cover things that they wished they had included, but didn't. As this court held in the Sage Products case, meaningful structural and functional limitations of the claims, on which the public is entitled to rely to design around the claims of the patent, cannot simply be ignored in application of the doctrine of equivalence. And in this case... Are you suggesting that there is absolutely no doctrine of equivalence that extends to the word deflection shoe? No, I'm not suggesting that. What I am saying is that in this case... Are you saying there's some evidence in the record that the doctrine of equivalence surely doesn't extend to a bent sub, like a prosecution disclaimer statement or something? I think that there is evidence that it cannot, as a matter of law, apply to a bent sub in this case. And here's why. First, I think, like the Sage Products case, this was not unforeseen new technology, the bent sub. In fact, everyone was using a bent sub, CMW... Are you under the impression that our doctrine of equivalence analysis is limited to equivalents that are unforeseen new technology? Because I think our case law quite clearly says the opposite. Your Honor, I don't think it's limited to that, but I think that this court has recognized that the doctrine of equivalence has a purpose, but it is also in conflict with the public notice function of the claims of a patent. And the cases of this court, like Sage Products, have recognized that that tension needs to be resolved in favor of the public, who is trying to interpret these patent claims... In the case of the doctrine of equivalence, we often look to experts to tell us whether they're interchangeable and to analyze the function, way, and result. Isn't that the absolute standard way in every DOE case that DOE is assessed? Your Honor, I think that the doctrine of equivalence case in this instance... Am I wrong? Isn't the standard way of addressing the doctrine of equivalence to look at the function, way, and result of the products and to utilize experts in that analysis? I think that it does look at the function, way, and result, and it requires that there be an insubstantiality of differences. And I think this court has repeatedly found that there are some cases where the facts are such that no reasonable jury could find that the differences are insubstantial. And I think that in this case, the claims were specifically written at a time when multiple different types of steering mechanisms were known, not only to the industry, but to CMW, that was aware of the HALE device and slant-faced bits and all kinds of other steering tools, including vent subs, which CMW itself used on many of its products at the time. In fact, if you look at a patent CMW got later, it actually... There is no law that says the doctrine of equivalence doesn't apply to a known substitute, and that's what they're expert upon. This is a known substitute, which is interchangeable. There is no rule of law that says known substitutes are off the table. Only unforeseeable substitutes are in play. Your Honor, that's not the entirety of my argument, but I think that it's important that CMW at the time, had it wanted to write its claims sufficiently broadly to cover vent sub technology or other types of steering other than very specifically deflection shoes, it could have done that. But in fact, in this case, it couldn't have. And that's another reason why summary judgment of non-infringement under the doctrine of equivalence was appropriate here. We cited the Wilson Sporting Goods case to the court in our brief. In the Wilson Sporting Goods case, the court held that if the hypothetical claim that the plaintiff is trying to apply to the defendant's products under the doctrine of equivalence would encompass prior art and render that hypothetical claim invalid, then it is improper as a matter of law to apply it there. And in fact, the burden of proving... How do we know that it would encompass prior art? Because CMW's expert, Mr. Koh, acknowledges that with respect to certain claims of the patent, the only distinction between the claim of the patent and the prior art German reference, which we discussed in our brief, the prior art German reference was a two-pipe horizontal directional drilling device that steered using the edge of the casing itself as opposed to an external separate deflection shoe applied to the casing. CMW's own expert, Mr. Koh, admitted that the only difference between some of these claims and that device is the absence of a deflection shoe. If CMW tries to, through the doctrine of equivalence, read that requirement... Is it the absence of a deflection shoe or is it because the German reference had a bent sub and he was admitting that a bent sub would not be able to be claimed in this case? I'm trying to understand your argument. He said that the difference between the German reference and claim one, for example, of the 569 patent, was the absence of a deflection shoe. So what did the German reference use instead of a deflection shoe? The German reference used, if you look at the casing itself, it bends as it goes through the hole and it's the outside of the casing itself that applies against the hole. It's essentially, they don't call it a bent sub, but it looks to be a bent sub. Can you tell me where his testimony is that the claims at issue, the only difference between the claims at issue in this case and the German reference is the deflection shoe? So it's a little bit of going through the record to see where the uncontested back statements were and then the denials to that, but if you also look at... His affidavit, Your Honor, where he says that... Mr. Koh, where he says that claim one is distinguishable because it doesn't have a deflection shoe. And if you look at the other elements of claim one, it's very clear that there's nothing else in claim one that isn't met... Okay, A2762, Your Honor. He states at paragraph 11, I disagree with Mr. Perkins' opinion that claims one, four through eight, ten, twelve, eighteen, and so on, are anticipated by the German reference. The German reference has no deflection shoe or any structure that could be implied to be a deflection shoe. That is the only distinction anywhere in the record. And as I was saying, in the Wilson Sporting Goods case, this court held that the burden of proving that the hypothetical claim that the plaintiff is asking the court to adopt for the doctrine of equivalence analysis would not ensnare the prior art rest with the plaintiff. Well, so every claim has been asserted in this patent, as I understand it. Is that correct? There have been various claims asserted in this patent. I don't think it's every claim. I understand that every claim, one through 31, has been asserted. I looked back and it looked like it, but am I incorrect? That's not correct, Your Honor. There were certain claims that were not included, but there were a variety that were. It seems to me that he says that is a ground upon which he distinguishes the German reference with regard to some of the claims, and I'm sure counsel on the other side will have a response for why that is. But you see he also distinguishes other claims, which must be at issue. Otherwise, why would he be distinguishing them on alternative, different grounds as well? Oh, Your Honor, there were other claims that had some additional limitations that he did argue were not present. But I think for the Wilson-Sporting Goods case, the issue is with respect to each claim and looking at the hypothetical claims. Which are the asserted claims there? I believe it can be asserted. At a minimum, all the ones in this paragraph, correct? Certainly the ones in that paragraph, yes, Your Honor. And so your Wilson-Sporting Goods argument could not be any good for claims 10, 12, 25, and 27, for which he argued, oh, I'm sorry, 10, 12, 25, and 27, or 18, 20, to 25, 27, because he argues two alternative reasons why the German reference doesn't apply. Well, and respectfully, Your Honor, we obviously disputed all of that in our summary judgment, but I agree that he does have other bases for some of the other claims. I don't read the Wilson-Sporting Goods case, however, as saying that the doctrine of equivalence, when you're doing the hypothetical claim, that you can treat that element, deflection shoe, and what is or isn't equivalent to that element in your hypothetical claim differently, because you might have additional dependent limitations in other claims. The issue is whether the deflection shoe element can be met by a bent sub, and to do that, if you craft a hypothetical claim saying that a deflection shoe is broader, then several claims of this patent are invalid. Okay, so therefore, there's a small point that I really do want to cover, though. It seems to me that it's quite clear that this summary judgment never entailed anything but the commercial products. The prototypes were clearly excluded. That's not accurate, Your Honor. Really, because counsel for Vermeer, this motion is limited to the commercial product. It would not end CMW's claim if it chose to proceed on them as to the three prototype units that were never sold. That would be up to CMW whether it wanted to do that. That's a good clarification. Now I know where you are on your summary judgment request. That is the trial of the summary judgment hearing. Now, the only thing I've seen that you pointed to to the contrary is some ambiguous language about accused products in your summary judgment motion itself and briefing. But even there, it's under the header, the giant, all-caps, bold language, commercial products, and then you talk about accused products underneath that header. And then you say that reference to accused products means all accused products, including the prototype. But then at the hearing itself, you further clarify, no, Your Honor, commercial products only. So where is the evidence that you were moving for summary judgment to put them on notice with regards to prototypes? As I said, Your Honor, this is a complicated history. So the first motion was with respect to the commercial products. Later on, the court asked us to address additional items in our final proposed judgment, and we did that. And when we submitted our final proposed order with respect to the deflection shoe limitation, we explained how under a proper construction of that term, summary judgment was appropriate on all accused products. If you look at the testimony that we cited – Did you address the prototype specifically there? If you look at the testimony that was cited in that section of the brief, it was citing to a deposition of Mr. Coe, CMW's expert, where he was specifically asked, under our construction of deflection shoe, it was about the prototype. Would that prototype with the hard-facing material infringe? And he said no. So if you read that document in connection with the testimony that was being cited, the final proposed order with respect to the deflection shoe term was about the prototype product. And Your Honor, the page – That's the final proposed order, and it's very tenuous. I can see how you might want to get there, but in the summary judgment brief itself, there's no mention of the prototype. There's only reference to commercial products. In the trial transcript on the hearing, you clarified not one but three times that prototype device is not the focus of this motion, Your Honor. And Mr. Hardy stated earlier, Your Honor, even if this motion on the commercial products is granted, we still have to go to trial on the prototype. That's an exact quote from counsel for your client at the hearing. Actually, Your Honor, that was my quote, but I do want to be clear. The page that you're referring to in the joint appendix is the page of the transcript that was cited by CMW in its reply brief. If you look at the transcript page in the district court record, it immediately precedes that page. It specifically shows that what I was talking about in that argument that you just quoted from was only the mounted-on limitation. I told the court that the arguments that we made on the deflection shoe limitation still stand, that we're still asking for what we asked for in our final proposed judgment. Where? Show me exactly where you told the court that the deflection shoe argument applied to the prototype. Your Honor, we specifically… This isn't a question of whether you're right or not. It's a question of whether they had notice for summary judgment. And I understand that, and I will give you the page site. And I didn't say it in the words you're saying, but what I said is we are still asking for summary judgment on the deflection shoe limitation as we asked for it in the final proposed order. And we said that at A3909 to A3910. So wait, A3909. Here, let me read you your quote. So again, as with Claims 1 through 29, summary judgment of non-infringement as to veneers, commercial products, the one that was put in the record with this motion should be granted as to Claims 30 and 31 because the drill system does not continue rotating. It stops rotating. So where is the point? Where do you make it clear that prototypes are at issue? I said, Your Honor, I go on. Vermeer also asked the court to construe two additional claims back at the claim construction proceeding that are relevant to infringement. And that was forward end and deflection shoe. Vermeer had intended to ask for dispositive relief on those terms when they were construed, and the construction of those terms has now been pushed out to this proceeding. Vermeer would submit that it is appropriate to grant summary judgment as to those claims because under the constructions of them, there is simply no factual dispute that Vermeer's product does not meet them. The information on that is in the proposed ruling, and I don't want to waste time on that. Vermeer's product does not meet them, but the product that you had referred to in the previous sentences were the commercial product. And you're talking product singular even. You don't even say Vermeer's product in all of their iterations. And then after that, you follow it up with this motion is limited to the commercial product. This prototype device is not the focus of this motion. We still have to go to trial on the prototype. If you thought you were going to win summary judgment on some other limitation, you wouldn't have a trial on the prototype. I see that I'm way over my time. I really did want to make one point on this issue, if it's okay. The reason we did not bring the deflection shoe limitation into the oral argument here was because the district court had already construed the term against us at the preliminary injunction proceeding. And then when he asked for the final proposed rulings, he said, I'm inclined to stick with my original construction on deflection shoe, but let's hear more. And so, Your Honor, for the purposes of— Did the final proposed order mention the prototypes? It says that we're asking for summary judgment on the term deflection shoe as to all accused products. And then as to the other terms— What page is that? 3754 and 5-6. There's a clear distinction between the claim terms that we ask for summary judgment on the commercial products and the claim terms that we ask for summary judgment on all products, or on the accused products. Okay, so just so we're clear, on page 3753, header Roman numeral 1, which says, Grant summary judgment that premier's commercial product does not infringe. And then as best as I can tell from outlining in English in fourth grade, A, B, and C fall under subheading 1. Is that correct? Your Honor, they do fall under that subheading. So subheading 1 governs A, B, and C, correct? Under normal rules of English outlining. They fall under that subheading, but the language in those sections— Is there a reference to prototypes on these pages? It doesn't say prototypes, but if you look at the arguments on nonadon, on while continuing rotation, and the others, it specifically says, therefore, the commercial product does not infringe. On deflection shoe, we said that the accused products do not infringe, and we cited specifically to the deposition testimony of Mr. Koh where he said even the prototypes would not infringe. And, Your Honor, we cited the Figg and Travaglia cases— Where's that citation? I'm sorry? Where's the citation? The 3756. Let's see. So 3753, it starts where we talk about mounted on, and we say the commercial product, when mounted on is properly— No, but just show me where the site is that you're talking about. Oh, on 3754. So all the other ones say— Which site is it? Oh, sorry. On 375—the site for the transcript? Yes. That would be on 3756, and it's the site here where it says, applying this construction, Vermeer's accused product cannot infringe testimony of Jeffrey Koh hearing transcript. And specifically in that information, Mr. Koh was talking about the prototype product there, and that's what we were telling the court, that we understand, Judge, that you have told us now twice you're not going to rule on our side on deflection shoe, but we do want you to know that if you do, you can grant summary judgment as to all the— Okay, and where is—what's the appendix page number of that testimony in the appendix? Your Honor, I'm not sure that that specific testimony made it into the joint appendix, but it is part of the record on appeal. Let's see. Well, why don't you—I'll tell you what. Why don't you submit—do a supplemental submission just giving us those pages that you're referring to? I think I can do that. Thank you. Thank you, Your Honor. Mr. Tomlinson. If I could address the German reference questions. Mr. Koh, at A2361, the counsel quit reading before the sentence was over. The German reference has no deflection shoe or any structure that could be implied to be a deflection shoe. In fact, it is stated in the German reference that the bit is purposely larger than the pipe. So that wasn't quite a complete statement. At A3677, there is a photograph of the German reference, and it looks like a bent sub, but in fact what it is is the casing, and in the briefing, counsel mistakenly believed it was a bent sub from the picture. However, a reading of the German reference, which begins the text at A3681, reveals on page A3687, which is page 7 of the German reference, in the first full paragraph that begins the bit 7, about halfway down, there is this statement. On the other hand, an eccentric bearing 11, which if you look back at the drawing, is the bottom of the end of the drill bit. An eccentric bearing 11, which is located a distance away from the bearing C8 at the other end of the tube, determines the position of the axis of rotation of bit 7 in such a way that it forms an angle in relation to the longitudinal axis of the pipe trim. Then, on the following page, it tells you how it steers, and it doesn't steer with a deflection chute. The first full paragraph of the following page, it says, if only the bit is driven via the drill pipe, when the pipe train is stationary, the direction of drilling changes in accordance with the angle of inclination, which is the axis of rotation of the bit with respect to the longitudinal axis of the pipe train because of the eccentricity of the bearing. So, it doesn't have a deflection chute, it has eccentric bearings, even though the drawing was mistakenly believed to be the deflection chute. I would also like to point out that at A1646, in the Vermeer brief where they say it lacks a deflection chute, right below the photograph, they make this statement. This is A1646. The bent housing assembly is formed by screwing together two machined segments with the threads of one segment being machined at the desired bend angle. The photograph appears, and they cite that page. And on the following page, or I'm sorry, two pages, A1650, they show it again. That's how they create the bent sub. They take two separate parts, they screw them together, and then they have a bent sub which has at the elbow the deflection chute. The court did not consider that evidence. That was in Mr. Coe's affidavit. The court simply missed it and instead said, you didn't prove to me that one of ordinary skill and the art couldn't find these to be interchangeable. It should have said, you didn't even establish a disputed fact that they could be interchangeable. And the court erred in doing so. Okay, thank you Mr. Thomason. Thank both counsel. The case is submitted. And that concludes our session for today.